**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

LORRAINE N. ZAMBRANO-SANCHEZ,

       Plaintiff,

v.                                         Case No. 6:19-cv-603-Orl-JRK

ANDREW M. SAUL,
Commissioner of Social Security,

       Defendant.
_____

## **OPINION AND ORDER**[1]

### **I. Status**

Lorraine N. Zambrano-Sanchez ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claims for disability income benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work is the result of a "[b]ack [p]roblem," a "[h]eart [p]roblem," liver disease, anxiety disorder, and depression. Transcript of Administrative Proceedings (Doc. No. 16; "Tr." or "administrative transcript"), filed June 3, 2019, at 91, 106, 122, 135, 277 (emphasis omitted). Plaintiff filed applications for DIB and SSI on July 23, 2015, alleging a disability onset date of January 1, 2011. Tr. at 249-53 (DIB); Tr. at 239-47 (SSI).[2] The applications

---

      [1]     The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 15), filed June 3, 2019; Reference Order (Doc. No. 18), signed June 6, 2019 and entered June 7, 2019.

      [2]     Although actually completed on July 23, 2015, see Tr. at 253 (DIB); Tr. at 247 (SSI), the protective filing date of the applications is listed elsewhere in the administrative transcript as August 13, 2015, see, e.g., Tr. at 106 (DIB); Tr. at 91 (SSI).

were denied initially, Tr. at 106-17, 118, 121, 162-64 (DIB); Tr. at 91-105, 119, 120, 159-61 (SSI), and upon reconsideration, Tr. at 122-34, 153, 155, 166-70 (DIB); Tr. at 135-52, 154, 156, 171-75 (SSI).

On March 21, 2018, an Administrative Law Judge ("ALJ") held a hearing during which he heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). See Tr. at 54-85. At the hearing, the alleged disability onset date was amended to August 13, 2015 (the protective filing date, see supra n.2). See Tr. at 56. At the time of the hearing, Plaintiff was forty-seven years old. See Tr. at 91 (indicating date of birth). The ALJ issued a Decision on April 11, 2018, finding Plaintiff not disabled since the alleged disability onset date. See Tr. at 33-43.

Thereafter, Plaintiff requested review of the Decision by the Appeals Council, Tr. at 238, and submitted additional evidence in the form of a brief authored by Plaintiff's counsel, medical records, and a May 31, 2018 letter from Lakeecia Green-Milbry, Plaintiff's treating advanced registered nurse practitioner ("ARNP"), Tr. at 2, 5, 6; see Tr. at 383-86 (brief); Tr. at 17-24 (medical records); Tr. at 25 (letter).[3] On February 8, 2019, the Appeals Council denied Plaintiff's request for review, Tr. at 1-4, thereby making the ALJ's Decision the final decision of the Commissioner. On March 29, 2019, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1) seeking judicial review of the Commissioner's final decision.

---

[3] The Appeals Council found that the medical records submitted do "not show a reasonable probability that [they] would change the outcome of the [D]ecision." Tr. at 2. As to Ms. Green-Milbry's letter, the Appeals Council found that "[t]his additional evidence does not relate to the period at issue" and thus "does not affect the decision about whether [Plaintiff was] disabled beginning on or before April 11, 2018." Tr. at 2. The Appeals Council did not make the medical records or the letter part of the administrative record. See generally Tr. at 5, 6.

On appeal, Plaintiff raises the following issue: "Whether the Appeals Council properly rejected the new and material evidence submitted." Memorandum in Support of Plaintiff (Doc. No. 20; "Pl.'s Mem."), filed August 5, 2019, at 11. Plaintiff specifically takes issue with the Appeals Council's treatment of Ms. Green-Milbry's letter. See Pl.'s Mem. 11-16. On October 2, 2019, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 21; "Def.'s Mem."). After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned finds that the Commissioner's final decision is due to be affirmed.

## II.  The ALJ's Decision

When determining whether an individual is disabled,[4] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

---

[4] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

Here, the ALJ followed the five-step sequential inquiry. <u>See</u> Tr. at 35-43. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since August 13, 2015, the application date." Tr. at 35 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: back degenerative disc disease, chronic liver disease/hepatitis/cirrhosis, and affective and anxiety disorders." Tr. at 35 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 36 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform light work with unlimited climbing of ramps/stairs; occasional climbing of ladders/ropes/scaffolds; unlimited balancing; frequent kneeling and crawling; occasional stooping and crouching; and frequent overhead reaching with her right dominant arm. She is also limited to semi-skilled work (work which requires understanding, remembering and carrying out some detailed skills, but does not require doing more complex work duties) interpersonal contact with supervisors and coworkers is on a superficial work basis, e.g., grocery checker; she can attend and concentrate for extended periods but should have normal, regular work breaks; she should not be required to work at fast paced production line speeds; she should have only occasional work place changes; and she should have only occasional contact with the general public.

Tr. at 38 (emphasis omitted).

At step four, the ALJ relied on the testimony of the VE and found that Plaintiff is "unable to perform any past relevant work." Tr. at 42 (emphasis omitted). At the fifth and final step of the sequential inquiry, after considering Plaintiff's age ("44 years old . . . on the date the application was filed"), education ("at least a high school education"), work experience, and RFC, the ALJ again relied on the testimony of the VE and found that "there

are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. at 42 (emphasis and citation omitted), such as "[m]otel housekeeper" and "[b]akery racker," Tr. at 43. The ALJ concluded that Plaintiff "has not been under a disability . . . since August 13, 2015, the date the application was filed." Tr. at 43 (emphasis and citation omitted).

### III.   Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's

findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.  Discussion

Plaintiff contends the Appeals Council erred in rejecting the May 2018 letter from Ms. Green-Milbry because, contrary to the Appeals Council's conclusion, the letter did relate to the period at issue. Pl.'s Mem. at 11-13, 15. Plaintiff also asserts there is a reasonable probability that Ms. Green-Milbry's letter would change the administrative result. Id. at 14-15. Plaintiff argues that because Ms. Green-Milbry is "Plaintiff's treating nurse practitioner, there is an even greater possibility that a factfinder could credit [Ms. Green-Milbry's] opinion over the opinion of a nonexamining state agency consultant who opined Plaintiff could perform light exertional activity." Id. at 15 (citation omitted). According to Plaintiff, "[e]ven if the ALJ reviewed Nurse [Green-]Milbry'[s] opinion and found 'good cause' to not give it controlling weight, the ALJ would err in giving greater weight to the opinion of the State agency non-examining physician." Id. Plaintiff lastly argues she showed good cause for submitting Ms. Green-Milbry's letter as new evidence to the Appeals Council because it post-dates the Decision. Id.

Responding, Defendant concedes the letter appears to relate to the period at issue. Def.'s Mem. at 8. Defendant nonetheless asserts the letter "was not material because there is no reasonable possibility that it would change the ALJ's [D]ecision." Id. Defendant contends that because Ms. Green-Milbry is not an acceptable medical source, her opinions in the letter are "not medical opinions and are not entitled to any special significance or consideration." Id. at 8-9 (citations omitted). Defendant further argues Ms. Green-Milbry "failed to provide an acceptable explanation for her opinion; and Plaintiff failed to cite, and

Ms. Green-Milbry failed to provide, objective medical findings or other acceptable evidence to support her opinion." Id. at 9 (citations omitted). Defendant does not address whether Plaintiff showed good cause for submitting the letter for the first time to the Appeals Council.

When the Appeals Council is presented with evidence that was not before the ALJ, the Appeals Council must consider the evidence if it is "new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5). In addition, a claimant must show good cause for submitting new evidence to the Appeals Council. See 20 C.F.R. §§ 404.970(b), 416.1470(b).

Evidence may be chronologically relevant even if it post-dates the ALJ's decision. See Washington v. Soc. Sec. Admin., Comm'r, 806 F.3d 1317, 1322 (11th Cir. 2015). In Washington, for instance, the United States Court of Appeals for the Eleventh Circuit held that an examining psychologist's opinions were chronologically relevant "even though [the psychologist] examined [the claimant approximately seven] months after the ALJ's decision." Id. This was because the psychologist reviewed the claimant's treatment records from the period before the ALJ's decision; because the claimant told the psychologist he had suffered from the conditions at issue "throughout his life" (which obviously would include the relevant time period); and because there was "no assertion or evidence" that the claimant's condition worsened "in the period following the ALJ's decision." Id.

In Stone v. Soc. Sec. Admin., 658 F. App'x 551, 553 (11th Cir. 2016), on the other

hand, the Court found that newly submitted medical records were not chronologically relevant. In doing so, the Court observed that the circumstances were "significantly different" from those in Washington because the new records in Stone "demonstrate[d] a worsening" of the relevant symptoms after the ALJ's decision. Id. at 554. Similarly, in Hargress v. Soc. Sec. Admin., Comm'r, 883 F.3d 1302, 1309-10 (11th Cir. 2018), the Court found that progress notes post-dating the ALJ's decision did "not relate to the period before the ALJ's . . . decision" and "nothing in these new medical records indicates the doctors considered [the claimant's] past medical records or that the information in them relates to the period at issue, which materially distinguishes this case from Washington." Hargress, 883 F.3d at 1309-10. Further, the Court found that a treating physician's opinion post-dating the ALJ's decision was not chronologically relevant because, even though the physician opined that the limitations dated back to 2013 (prior to the ALJ's decision), "nothing in the form [completed by the physician] or any other documents indicated that [the physician] evaluated [the claimant's] past medical records when forming that opinion," and the physician "did not treat [the claimant] in 2013." Id. at 1310.

At the end of the day, although the Appeals Council is "not required to give a . . . detailed explanation or to address each piece of new evidence individually," id. at 1309 (citing Mitchell v. Comm'r, Soc. Sec. Admin., 771 F.3d 780, 784 (11th Cir. 2014)), if the Appeals Council "erroneously refuses to consider evidence, it commits legal error and

- 8 -

remand is appropriate," Washington, 806 F.3d at 1320.[5]

Here, Ms. Green-Milbry is an ARNP at Brevard Health Alliance's Malabar Clinic. See, e.g., Tr. at 786. The record before the ALJ contained progress notes from Ms. Green-Milbry spanning May 12, 2016 to February 7, 2018. See Tr. at 786-912, 942-46. In the May 2018 letter submitted to the Appeals Council, Ms. Green-Milbry states that Plaintiff "has been unable to work related [sic] since known to [Ms. Green-Milbry] by examination" due to a number of "medical conditions," including spinal cord disease, chronic pain syndrome, liver disease, and depression. Tr. at 25. Ms. Green-Milbry opined that due to these "chronic conditions," Plaintiff "has been advised not to aggravate symptoms with prolonged standing or walking." Tr. at 25. She further opined that in an eight-hour day, Plaintiff is "not recommended to stand more than 2 hours at a time." Tr. at 25. According to Ms. Green-Milbry, Plaintiff "should not perform any heavy lifting, pulling, pushing, repetitive motions or bending as this will only aggravate symptoms." Tr. at 25.

The Appeals Council acknowledged that Plaintiff "submitted medical records from [Ms. Green-Milbry] dated May 31, 2018 (1 page)." Tr. at 2. But, as noted above, the Appeals Council found that "[t]his additional evidence does not relate to the period at issue" and thus "does not affect the decision about whether [Plaintiff was] disabled beginning on

---

[5] By contrast, if the Appeals Council actually considers evidence first presented to it but denies review, different standards apply. If a claimant challenges the Appeals Council's denial in that instance, a reviewing court must determine whether the new evidence renders the denial of benefits erroneous. See Mitchell, 771 F.3d at 784-85 (citing Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007)); see also Coleman v. Comm'r of Soc. Sec., 454 F. App'x 751, 754 (11th Cir. 2011) (citation omitted) (noting that "[t]he Appeals Council may deny review if the new evidence does not show the ALJ's decision to be erroneous"). In other words, a claimant seeking remand under sentence four of 42 U.S.C. § 405(g), "must show that, in light of the new evidence submitted to the Appeals Council, the ALJ's decision to deny benefits is not supported by substantial evidence in the record as a whole." Timmons v. Comm'r of Soc. Sec., 522 F. App'x 897, 902 (11th Cir. 2013) (unpublished) (citing Ingram, 496 F.3d at 1266-67); see also Mitchell, 771 F.3d at 785.

- 9 -

or before April 11, 2018." Tr. at 2. Also, as noted, the Appeals Council did not make Ms. Green-Milbry's letter part of the record. See Tr. at 5, 6. Accordingly, the record reflects that the Appeals Council refused to substantively consider the letter. See Hargress, 883 F.3d at 1309 (finding Appeals Council "declined to consider" new evidence when Appeals Council stated the new evidence was "about a later time" and "did 'not affect the decision about whether [Plaintiff was] disabled beginning on or before February 24, 2015'").[6]

Ms. Green-Milbry's letter is dated about month and a half after the Decision, and her opinions are evidently based on her treatment of Plaintiff, which took place prior to the Decision. As Plaintiff argues and Defendant apparently concedes, the letter does relate to the period prior to the Decision. See Washington, 806 F.3d at 1322. For the reasons set out below, however, there is no reasonable probability that the letter would change the outcome of the Decision. The Appeals Council thus did not err in refusing to consider Ms. Green-Milbry's letter.

First, Ms. Green-Milbry's opinions are not considered medical opinions because she is not an acceptable medical source. The Regulations, as amended,[7] provide that an acceptable medical source includes a "Licensed Advanced Practice Registered Nurse, or

---

[6] To the extent Defendant argues that "Plaintiff failed to show that Ms. [Green-Milbry's] statement, when considered with the record as a whole, rendered the ALJ's [D]ecision erroneous," Def.'s Mem. at 6, 9, this standard does not apply because it does not appear that the Appeals Council actually considered the evidence, and Defendant does not argue that the Appeals Council did. See infra n.5.

[7] On January 18, 2017, the SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (January 18, 2017); see also 82 Fed. Reg. 15, 132 (Mar. 27, 2017) (amending and correcting the final rules published at 82 Fed. Reg. 8244). Because Plaintiff filed her claims before that date, the undersigned cites the rules and Regulations that were in effect on or otherwise applicable to the date the claims were filed, unless otherwise noted.

other licensed advanced practice nurse with another title, for impairments within his or her licensed scope of practice." 20 C.F.R. §§ 404.1502(a)(7), 416.902(a)(7). This Regulation, however, applies only "to claims filed . . . on or after March 27, 2017." 20 C.F.R. §§ 404.1502(a)(7), 416.902(a)(7). Because Plaintiff's claims were filed on July 23, 2015, Ms. Green-Milbry is not an acceptable medical source. As such, although her opinions should be considered by an ALJ, they are not "medical opinions" and are not entitled to any special deference. Leone v. Comm'r of Soc. Sec., No. 8:19-cv-998-T-24JSS, 2020 WL 3640061, at *3 (M.D. Fla. June 23, 2020) (unpublished) (citing Himes v. Comm'r of Soc. Sec., 585 F. App'x 758, 762 (11th Cir. 2014)), report and recommendation adopted sub nom. Leone v. Saul, No. 8:19-cv-998-T-24JSS, 2020 WL 3640534 (M.D. Fla. July 6, 2020) (unpublished).[8]

Second, Ms. Green-Milbry's opinions are conclusory and are not accompanied by any supporting medical findings or other evidence. See, e.g., Haralson v. Colvin, No. 5:13-CV-130 MTT, 2014 WL 4267498, at *4 (M.D. Ga. Aug. 28, 2014) (unpublished) (finding there was no reasonable probability that doctor's letter would change the administrative result, in part because the doctor did "not identify any relevant evidence, including laboratory findings, to support his conclusory statements about [the p]laintiff's various problems . . .").[9]

---

[8] The law Plaintiff relies on applies to treating physicians or other treating acceptable medical sources, not to ARNPs like Ms. Green-Milbry. See Schink v. Comm'r of Soc. Sec., 935 F.3d 1245, 1259, 1260 n.5 (11th Cir. 2019) (recognizing that "the opinions of a treating physician are entitled to more weight than those of a consulting or evaluating health professional," and "[m]ore weight is given to the medical opinion of a source who examined the claimant than one who has not" (emphasis added)).

[9] The Haralson court assumed "for the sake of argument" that the plaintiff could establish the doctor's letter was new, noncumulative evidence. 2014 WL 4267498, at *4.

Third, like in <u>Hargress</u>, Ms. Green-Milbry's opinion is inconsistent with her own records. 883 F.3d at 1310 (finding that even if the medical opinion submitted to the Appeals Council was chronologically relevant, there was no reasonable possibility that it would change the administrative result, in part because it "contradicted [the doctor's] other records"). As the ALJ observed, progress notes from Brevard Health Alliance's Malabar Clinic, including those from Ms. Green-Milbry, "did not document any significant physical examination findings" and "[o]ther than joint tenderness, decreased range of motion of the lumbar spine, weakness in the lower extremities (during one visit in February 2018), and positive straight leg raise, [Plaintiff] maintained normal full range of motion of all other major joint[s]." [10] Tr. at 40; <u>see</u> Tr. at 795, 800, 805, 810 (October 2016, June 2016, and May 2016 progress notes showing normal full range of motion in all joints and no clubbing, cyanosis, edema, or deformity in extremities); Tr. at 815, 835 (December 2017 and April 2017 progress notes showing normal range of motion in all joints and no clubbing, cyanosis, or edema in extremities); Tr. at 830 (May 2017 progress note showing normal range of motion and indicating there was "no deformity or scoliosis noted of thoracic or lumbar spine"); Tr. at 789, 794, 830 (October 2016 and May 2017 progress notes indicating Plaintiff denied muscle weakness); Tr. at 800, 805, 810 (June 2016 and May 2016 progress notes showing normal gait); Tr. at 944-45 (February 2018 progress note indicating Plaintiff denied muscle weakness, but later stating "weakness noted" in the lower extremities and showing a positive straight leg exam (capitalization omitted)). The ALJ also

---

[10] The ALJ did not refer to Brevard Health Alliance's Malabar Clinic or Ms. Green-Milbry by name, but he cited the exhibits containing their progress notes (Exhibits 16F and 18F). <u>See</u> Tr. at 40.

observed that after 2015 (when Ms. Green-Milbry began seeing Plaintiff) Plaintiff "received little to no ongoing treatment specific for her degenerative disc disease aside from Lyrica[11] because she refused to quit drinking." Tr. at 40; see Tr. at 786-912, 942-46; Tr. at 813 (December 2017 progress note indicating Plaintiff requested to try "something diff[erent]" from Lyrica; Ms. Green-Milbry warned Plaintiff about the "side effects of mixing her meds with ETOH,"[12] but Plaintiff did not want to stop drinking).

Fourth, the opinions in Ms. Green-Milbry's letter are also inconsistent with the rest of the medical evidence of record. See Hargress, 883 F.3d at 1310 (finding that even if the medical opinion submitted to the Appeals Council was chronologically relevant, there was no reasonable possibility that it would change the administrative result, in part because it was "inconsistent with medical records created during the relevant time period and submitted to the ALJ"). This evidence shows that despite some complaints of back pain, musculoskeletal examination findings were mostly unremarkable, and Plaintiff had a normal gait. See Tr. at 560, 583 (August 2015 and February 2015 progress notes showing musculoskeletal exam revealed only normal gait); Tr. at 774 (March 2016 progress note indicating Plaintiff "can walk without assistance" and there was "no evidence for severe ortho issue"); Tr. at 565, 571, 579, 596 (July 2015, June 2015, March 2015, and October 2015 progress notes showing normal full range of motion in all joints and no clubbing, cyanosis, edema, or deformity noted in extremities).

Based on the foregoing, although Ms. Green-Milbry's letter was related to the period

---

[11] Lyrica is an oral medication used for neuropathic pain. See Pregablin, Medline Plus, https://medlineplus.gov/druginfo/meds/a605045.html (May 15, 2020).

[12] "ETOH" likely stands for ethanol alcohol.

prior to the Decision, there is no reasonable probability that it would change the outcome of the Decision. The Appeals Council thus did not err in refusing to consider it. See Hargress, 883 F.3d at 1310.[13]

### V.   Conclusion

After a thorough review of the entire record, the undersigned finds that the ALJ's Decision is supported by substantial evidence. Accordingly, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3), **AFFIRMING** the Commissioner's final decision.

2. The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on September 21, 2020.

_____
JAMES R. KLINDT
United States Magistrate Judge

bhc
Copies to:
Counsel of Record

---

[13] Because there is no reasonable probability that the evidence would change the outcome of the Decision, the undersigned need not address whether Plaintiff showed good cause for submitting Ms. Green-Milbry's letter for the first time to the Appeals Council.